# In the United States Court of Federal Claims

| | |
|---|---|
| **THERESA GARNER,**<br><br>                *Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>                *Defendant.* | No. 24-795<br>(Filed: January 22, 2025) |

*Theresa Garner*, *pro se*, for Plaintiff.

*Tara K. Hogan*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI,** *Judge***.**

On September 5, 2024, Plaintiff, proceeding *pro se,* filed an Amended Complaint alleging both contractual and noncontractual claims against her former employing agencies, the Department of Commerce (DoC), Department of Labor (DoL), and Department of Defense (DoD). *See generally* ECF 21. As relief, Plaintiff seeks an order directing the correction of Plaintiff's civilian pay records as well as $393,444.60 in "back pay damages relief." ECF 21 at 3, 24. Pending before the Court is the Government's Motion to Dismiss (ECF 23) for lack of jurisdiction and failure to state a claim. For the following reasons, the Government's Motion is **GRANTED**.

## BACKGROUND

Plaintiff is a former federal employee. *See generally* ECF 21. Prior to qualifying for disability retirement, she previously worked for the DoC, the DoL, and the DoD. *See* ECF 21 at 1, 12, 20.

Plaintiff originally filed an action before this Court on May 20, 2024, alleging, among other things, whistleblower retaliation by the agencies that formerly employed her. ECF 1. The Government thereafter moved for summary dismissal (ECF 10), which the Court granted in part and denied in part after finding many of Plaintiff's claims non-

jurisdictional. ECF 20. In its Opinion, the Court dismissed all of Plaintiff's claims except those related to breach of contract and civilian pay claims, for which the Court granted Plaintiff leave to file an amended complaint to "more clearly plead any breach of contract claims arising from her Department of Commerce and Department of Labor settlement agreements as well as the 'underfunding' of her final paycheck from the Department of Defense." ECF 20. Plaintiff filed her Amended Complaint on September 5, 2024, ECF 21, and the Government responded on September 19, 2024, by filing the Motion to Dismiss presently at issue. ECF 23.

As best as the Court can discern from the facts referenced in the Amended Complaint,[1] Plaintiff began working as a field representative for the DoC (Census Bureau) in 2010. ECF 21 at 43, 71. In 2015, she received a career conditional appointment as an economic assistant at the DoL (Bureau of Labor Statistics). ECF 21 at 35, 55-57. She worked at DoL until 2016. ECF 21 at 35. In September 2016, she began working as a store associate at the Defense Commissary Agency, a DoD appropriated organization. ECF 21 at 73. That same month, she entered into settlement agreements with both the DoC and DoL and voluntarily resigned from the DoC. ECF 21 at 1, 58, 62-64; ECF 13-1 (DoL Settlement Agreement); ECF 13-2 (DoC Settlement Agreement).[2] At some point in 2016, Plaintiff fractured her hip on-the-job and sought disability compensation from the Office of Workers' Compensation Programs. ECF 21 at 19, 33-34. In 2018, the Government approved her disability retirement and she retired from the DoD. ECF 21 at 19, 28.

Plaintiff alleges that her former employers, the DoL, DoC, and DoD provided the Office of Personnel Management (OPM) with false information regarding the nature of Plaintiff's employment as well as her separation dates and failed to correct said errors when put on notice, such that Plaintiff was denied financial benefits. ECF 21 at 1. Generally, Plaintiff alleges that the Government wrongfully made "unauthorized personnel records changes harmful errors, unauthorized status changes, other falsification and disparagements of an exemplary and outstanding person and personnel records, and diminishing historical events, pursuant to the Continuous Violations Doctrine." ECF 21 at 2. More specifically, she alleges that the DoD incorrectly reported her last day of work to OPM, resulting in the "underfunding" of her retirement annuity by 2.12 months (Count I). ECF 21 at 12-13. Plaintiff also alleges several errors in her personnel records related to her

---

[1] Per Court of Federal Claims Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Accordingly, the Court treats Plaintiff's exhibits to the Amended Complaint as part of the pleading.

[2] Though not included with the Amended Complaint, Plaintiff previously entered copies of her DoL and DoC settlement agreements into the record as exhibits to her Response to the First Motion to Dismiss and Reply in Support of her Motion for Judgment on the Pleadings. *See* ECF 13-1; ECF 13-2. When considering a motion to dismiss for failure to state a claim, the Court "primarily consider[s] the allegations in the complaint," but may also consider documents incorporated into the complaint by reference or those integral to the claim. *DiMare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

employment at DoL and DoC, all of which impacted the computation of her retirement annuity, to include: (1) failure to recognize her status as a dual employee of both DoL and DoC; (2) incorrect reports of separation; and (3) her improper classification as a temporary employee (Count II). ECF 21 at 14-17. In Count III, Plaintiff alleges that health insurance premiums were deducted from her paychecks but that she did not receive health benefit coverage. ECF 21 at 18. In Count IV, Plaintiff alleges that the Government "failed to pay for on-the-job fractured hip and osteoarthritis injury." ECF 21 at 19-22.

Though not enumerated as a count, Plaintiff also alleges that the United States breached two settlement agreements and her resignation letter by providing negative information about her and failing to correct her personnel records. ECF 21 at 3-10. While she does not provide an exhaustive list, Plaintiff states that the Government disparaged her in violation of her settlement agreements by providing negative information about her to police departments, the Governor of Wisconsin, and other unnamed private entities. ECF 21 at 6. She also maintains that the Government breached its contractual obligations to "make corrections once the harmful errors were identified" and "correct all separation-related documents for [Plaintiff] in her Official Personnel File." ECF 21 at 3, 8. Separately, Plaintiff also makes numerous disjointed allegations of "false arrest," "sexual assault twice," "threat[s] to wrongfully arrest," "defamation of character," "arbitrary and capricious threats," "false claims," "falsification paperwork," "theft of a government vehicle," "tortious records interference," and "knowing[], willful, inattentional breach of contract." ECF 21 at 6, 10.

As relief, Plaintiff alleges that "she is entitled to payment by the government for back pay, an annuity award for on-the-job fractured hip injury compensation for total disability retirement, retirement approved by the United States and a separate civilian non contractual back pay claim." ECF 21 at 2.

## LEGAL STANDARDS

This Court, like all federal courts, is a court of limited jurisdiction; its jurisdiction is generally defined by the Tucker Act, 28 U.S.C. § 1491. *See Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1132 (Fed. Cir. 1998). The Tucker Act "gives the court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act itself, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). Instead, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id*. "[T]he absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act." *Id*. at 1173.

If the Court determines that it lacks subject-matter jurisdiction, it must dismiss the action. Court of Federal Claims Rule 12(h)(3); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Although *pro se* litigants are generally held to a lower standard in pleading, *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980), they nonetheless "bear[] the burden

3

of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When considering a motion to dismiss for lack of subject-matter jurisdiction brought pursuant to Rule 12(b)(1),[3] "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

Additionally, Rule 12(b)(6) permits the Court to dismiss an action for failure to state a claim upon which relief may be granted.[4] Dismissal is proper under Rule 12(b)(6) "when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021). The Court "must accept as true all the factual allegations in the complaint and … must indulge all reasonable inferences in favor of the non-movant." *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1274 (Fed. Cir. 2023) (quoting *Conti v. United States*, 291 F.3d 1334, 1338 (Fed. Cir. 2002)). To survive a challenge pursuant to Rule 12(b)(6), a plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## DISCUSSION[5]

### I.   The Court Lacks Jurisdiction Over Count I

In Count I, Plaintiff alleges that the DoD incorrectly reported to OPM that her final day in pay status was November 5, 2016, instead of January 17, 2017,[6] resulting in "DoD underfund[ing] the Plaintiff's back pay annuity paycheck 2.12 months from 11/5/2016-1/17/2017." ECF 21 at 12. Although Plaintiff styles her claim as a "back pay" claim, the Court construes it as a claim arising from the improper calculation of her retirement annuity. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (explaining that courts must look to the "true nature of the action" in ascertaining whether jurisdiction exists)). This is due to Plaintiff's repeated references to her retirement annuity, her inclusion of what appears to be an annuity computation, and her repeated reference to both civilian and military retirement statutes and regulations. *See, e.g.*, ECF 21 at 11-14,

---

[3] Court of Federal Claims Rule 12(b)(1) is the same as Federal Rule of Civil Procedure 12(b)(1). *Compare* RCFC 12(b)(1) *with* Fed. R. Civ. P. 12(b)(1).

[4] Court of Federal Claims Rule 12(b)(6) is the same as Federal Rule of Civil Procedure 12(b)(6). *Compare* RCFC 12(b)(6) *with* Fed. R. Civ. P. 12(b)(6).

[5] In her opposition to the Motion to Dismiss, Plaintiff raises several arguments previously addressed—and rejected—by the Court, to include the Government's purported waiver of its 12(b)(6) defenses and failure to timely answer. *See*, *e.g.*, ECF 34 at 1-2, 11-15, 23-24. The Court need not address these arguments again. *See* ECF 25, ECF 39.

[6] The Amended Complaint contradicts itself, stating both that "the actual correct date of pay stoppage was 11/5/2016," and "[t]he last day worked before leave without pay, pay date was 1/17/2017." ECF 21 at 12.

23. Notably, in her opposition to the Motion to Dismiss, Plaintiff clarifies the nature of her claim: "to make the analysis even crystal clear the Plaintiff's retirement should have been calculated from the actual date of injury 11/5/2016, rather than 2/17/2017 already calculated by OPM, $7054.58."[7] ECF 34 at 7.

As noted in the previous dismissal opinion, the Court "may not entertain claims concerning the calculation of Plaintiff's civil service retirement annuity under the Federal Employee Retirement System (FERS)." ECF 20 at 4. "[J]urisdiction to review any potential miscalculation by [the Office of Personnel Management] lies with the [Merit Service Protection Board], and not the Court of Federal Claims." *Id*. at 4-5 (quoting *Stekelman v. United States*, 752 F. App'x 1008, 1011 (Fed. Cir. 2018) (citing 5 U.S.C. § 8461(e)(1); *Miller v. Office of Pers. Mgmt*, 449 F.3d 1374, 1377 (Fed. Cir. 2006)). Because Congress has established an exclusive remedy for FERS-related claims outside this Court, this Court lacks jurisdiction to adjudicate Plaintiff's claims regarding her retirement benefits or pension. *See* 5 U.S.C. § 8461(e)(1).

Moreover, even if Count I is instead construed as a claim for back pay based on the dollar amount Plaintiff believes the DoD "underfunded" her FERS account, Plaintiff's claim still fails for multiple reasons. First, Plaintiff does not cite—and the Court is unaware of—any money-mandating civilian pay statute that would entitle her to relief. Although the Amended Complaint cites a number of statutes, none provide the Court with jurisdiction. Specifically, Plaintiff cites: (1) OPM retirement statutes and regulations (*e.g*., 5 CFR § 831.2202 and 5 CFR § 844.301); (2) the Back Pay Act, 5 U.S.C. § 5596, alongside its implementing regulations (5 CFR part 550, subpart H); (3) 31 U.S.C. § 3702; and (4) military retirement and pay statutes, such as 10 U.S.C. § 1201 and 37 U.S.C. § 204. Again, regarding the OPM retirement statutes and regulations, exclusive jurisdiction over claims concerning the calculation of a retirement annuity administered by OPM is vested elsewhere, rendering Plaintiff's reliance on OPM retirement statutes and regulations misplaced. *See* ECF 20 at 4. As for the Back Pay Act, it alone is not a money-mandating statute. *Mendoza v. United States*, 87 Fed. Cl. 331, 335 (2009) ("[S]tanding by itself, Section 5596 is not a money-mandating source that would support a claim under the Tucker Act."). Instead, it is only money-mandating where the plaintiff's Back Pay Act claim is based on violations of another money-mandating source. *Id.*; *Worthington v. United States*, 168 F.3d 24, 26 (Fed. Cir. 1999) ("The Back Pay Act is . . . a 'money-mandating' statute *when based on violations of statutes or regulations covered by the Tucker Act*." (emphasis added)). Similarly, 31 U.S.C. § 3702, which provides various Federal officials and agencies with settlement authorities, is not money-mandating. *Curtin v. United States*, 91 Fed. Cl. 683, 687 (2010); *see also Fisher*, 402 F.3d at 1173 (a source of substantive law is money

---

[7] Plaintiff also clarifies that she "never alleged a missing paycheck from 11/5/2016," ECF 34 at 18, and asserts that "at no time did the Plaintiff in her Amended complaint [ever] seek or ask for a "final paycheck" "'underfunding[,]" ECF 34 at 6 (quotations in original).

mandating if it "can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [it] impose[s]").

Finally, the military retirement and pay statutes Plaintiff cites, including 10 U.S.C. § 1201 and 37 U.S.C. §204, do not, by their plain terms, apply to Plaintiff given her status as a former civilian employee and not a uniformed member of the armed services. "In determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Service, Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008). If a plaintiff is not within the eligible class of plaintiffs, the statute is not money-mandating as to that particular plaintiff and the Court lacks jurisdiction. *Greenlee County v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007). Here, Plaintiff is not a current or former servicemember and so she is not "within the class of plaintiffs entitled to recover under [military pay statutes]." *Jan's Helicopter Service*, 525 F.3d at 1309. The Court thus lacks jurisdiction over any claim brought by Plaintiff pursuant to a military retirement or pay statute.

## II.    The Court Lacks Jurisdiction Over Count II

In Count II, Plaintiff raises more of the same. Specifically, Plaintiff alleges a number of errors in her DoL and DoC personnel records that allegedly impacted the calculation of her retirement annuity, to include: (1) failure to recognize her status as a dual employee of both DoL and DoC, costing her seven years of creditable service; (2) incorrect reports of separation; and (3) her improper classification as a temporary employee. ECF 21 at 14-17. The crux of Plaintiff's argument is that her annuity was underfunded, ECF 21 at 16, and she maintains that a "total creditable service underfunded back annuity payment is owed." ECF 21 at 14. In support of her claim, she includes what appears to be an annuity calculation. ECF 21 at 17.

As discussed above, the Court may not entertain claims concerning the calculation of Plaintiff's FERS annuity. Exclusive jurisdiction to review potential miscalculations by OPM lies with the MSPB, and not this Court. *Stekelman*, 752 F. App'x at 1011. As such, this Court lacks jurisdiction to hear Count II.

Additionally, Count II fails because the Amended Complaint does not cite any money-mandating jurisdictional sources that would entitle Plaintiff to relief. Plaintiff again raises the Back Pay Act, 5 U.S.C. § 5596, which as discussed above, is not a money-mandating statute on its own. *See Mendoza*, 87 Fed. Cl. at 335; *Worthington*, 168 F.3d at 26. Plaintiff also repeatedly cites the Dual Compensation Act, 5 U.S.C. § 5533, which provides that an employee may not receive "basic pay" from more than one position and contemplates exceptions to that general rule, and 13 U.S.C. § 23(b), which authorizes the Census Bureau to employ and compensate an employee of another agency, "with the consent of the head of the respective department or office" for field work. ECF 21 at 14-17. As the Government acknowledges, these statutes when read together "authorize a

6

certain type of civilian dual appointment." ECF 23 at 15. These statutes cannot, however, be fairly read "as mandating compensation for damages sustained as a result of the breach of the duties [they] impose[]." *Fisher*, 402 F.3d at 1173. That is because they do not independently entitle an employee to pay; instead, they merely provide an exception to the general prohibition on collecting basic pay from more than one position for pay made for certain types of work.

In any case, even if Plaintiff had shown that the Dual Compensation Act and 13 U.S.C. § 23(b) are money-mandating, Plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although she alleges the Government "falsely denied knowledge" of her dual appointment and incorrectly reported the nature and timing of her employment to OPM, *see* ECF 21 at 14-16, the facts alleged do not implicate the subject matter of the invoked statutes, which concern collection of basic pay. Plaintiff does not appear to allege that the DoC or DoL wrongly deprived her of basic pay for time worked,[8] or any other facts that would potentially entitle her to relief under the statutes cited. Instead, she alleges that "creditable service (7)+ years [wa]s incorrectly removed," presumably from her annuity calculation. ECF 21 at 17. Therefore, Count II must be dismissed as the Amended Complaint "does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen,* 995 F.3d at 1379.

### III. The Court Lacks Jurisdiction Over Count III

Plaintiff next alleges that health insurance premiums were deducted from her paychecks but "health insurance has never been activated or received from OPM." ECF 21 at 18. She seeks reimbursement for nine years of "payroll deductions taken and no health insurance provided." ECF 21 at 18.

In support of her claim, Plaintiff again cites 5 U.S.C. § 5596 and 13 U.S.C. § 23(b). As discussed above, 5 U.S.C. § 5596 is not money-mandating on its own, *Mendoza*, 87 Fed. Cl. at 335, and 13 U.S.C. § 23(b) merely authorizes a certain type of civilian dual appointment.

Plaintiff also cites 5 U.S.C. § 8342(a), which provides that an eligible employee who separates from service and meets certain conditions may file an application with OPM for a lump-sum refund of their retirement contributions, which, if granted, extinguishes their annuity rights.[9] The Government argues that "[t]his statute does not mandate the

---

[8] In her "Statement of Relief," Plaintiff notes in passing that the Government took "unjustified or unwarranted personnel actions resulting in the withdrawal, reduction, and denial of all or part of Plaintiff's pay." ECF 21 at 23. Not only is it unclear which agency Plaintiff believes took this action (and for what time period), but the Court finds that the focus of Count II is clearly on Plaintiff's annuity calculation, not failure to pay basic pay during her periods of employment.

[9] Although admittedly difficult to follow, one of Plaintiff's primary claims seems to be that the Government improperly calculated her retirement annuity. The Court is at a loss as to how a claim brought pursuant to 5 U.S.C. § 8342(a), which concerns the refund of retirement deductions and subsequent extinguishment of annuity rights, could simultaneously be raised.

payment of money." ECF 23 at 23. However, the Court recognizes that, under the plain language of the statute, an eligible employee who files an application with OPM "is entitled to be paid the lump-sum credit," suggesting it is indeed money-mandating.[10] 5 U.S.C. § 8342(a); *see also Wise v. United States*, 18 Cl. Ct. 763, 764 (1989) (recognizing that a separated employee "was paid a lump-sum refund of his retirement deductions pursuant to this statutory authority."); *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472-73 (2003) (explaining that "a statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it can *fairly be interpreted* as mandating compensation by the Federal government for the damage sustained" and is "*reasonably amendable* to the reading that it mandates a right of recovery in damages." (emphases added and internal quotation marks omitted)).

Nevertheless, the Court cannot hear Plaintiff's claim. By statute, Congress established an exclusive remedial scheme that displaced this Court's jurisdiction over claims brought under the Civil Service Retirement System.[11] Specifically, 5 U.S.C. § 8347(b) provides that OPM adjudicates all such claims, and 5 U.S.C. §8347(d)(1) provides that review of any actions taken by OPM in administering such claims is conducted by the MSPB. *See also Puladian v. OPM*, 130 F. App'x 453 (Fed. Cir. 2005). The Federal Circuit has long recognized that "the Court of Federal Claims does not have jurisdiction over a case that could be heard by the MSPB." *Pueschel v. United States*, 297 F.3d 1371, 1378 (Fed. Cir. 2002).

Plaintiff cites no other statutes in support of her claim for the return of her health insurance premiums. Even as a *pro se* litigant, as the party invoking jurisdiction, Plaintiff "has the burden to show compliance with the Tucker Act." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997) (citing *Reynolds*, 846 F.2d at 748). She has not met that burden here. Accordingly, the Court lacks jurisdiction to hear Count III.

## IV. The Court Lacks Jurisdiction Over Count IV

Count IV of the Amended Complaint alleges that the Government "failed to pay for on-the-job fractured hip and osteoarthritis injury approved by the United States." ECF 21 at 20. Plaintiff specifies that her "disability retirement was approved from on-the-job injury and disability was awarded with no back pay to date." ECF 21 at 21. Specifically, she appears to allege non-payment of: (1) 288 weeks of compensation pursuant to an Office of Workers' Compensation Program award; and (2) disability retirement benefits. ECF 21 at 19.

---

[10] Notably, other provisions of the statute also include mandatory payment language. *See, e.g.*, 5 U.S.C. § 8342(c) (providing that lump-sum benefits "shall be paid" to survivors).

[11] Plaintiff has expressly denied that she was covered by the Civil Service Retirement System: "[Plaintiff] was under the Federal Employment Retirement System (FERS), she was not under the Civil Service Retirement System (CSRS)." ECF 21 at 15.

To the extent Count IV raises a claim based on a civilian disability annuity under FERS (5 U.S.C. § 8451) or military disability retirement (10 U.S.C.§ 1201), the Court lacks jurisdiction to entertain those claims for the reasons already discussed.[12]

As for sources of law regarding Count IV that have not been previously addressed, Plaintiff cites the Federal Employment Compensation Act. In her response to the Motion to Dismiss, she clarifies that "[Federal Employment Compensation Act] amount owed stems from retirement injury withheld and correct records, after LWOP ended July 2018, and retirement approved for fractured hip injury," ECF 34 at 7, and that her claim "fall[s] under the Federal Employment Compensation Act." ECF 34 at 18.

However, Congress has specifically foreclosed any judicial review of determinations under the Federal Employment Compensation Act, 5 U.S.C. § 8101 *et seq*. The Act provides that "[t]he action of the Secretary or her designee in allowing or denying a payment under this subchapter is – (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) *not subject to review by another official of the United States or by a court* by mandamus or otherwise." 5 U.S.C. 8128(b) (emphasis added). Accordingly, challenges to decisions regarding disability compensation claims must be dismissed by this Court for lack of jurisdiction. *See Pueschel*, 297 F.3d at 1377; *Goodman v. MSPB*, 106 F. Appx. 707, 708 (Fed. Cir. 2004).

V.     **The Court Must Dismiss Plaintiff's Breach of Contract Claims**

While Plaintiff does not expressly articulate any contract claims within her enumerated counts, she alleges that she formed three contracts with the Government which were subsequently breached. These alleged contracts are her "resignation letter," her DoC settlement agreement, and her DoL settlement agreement. ECF 21 at 3-10. Each of these claims fail.

A.     Plaintiff fails to plausibly allege that her resignation letter was a contract.

First, Plaintiff asserts that the DoL and DoC breached the terms of her resignation letter. ECF 21 at 3-7, 63-64. Plaintiff points to the provision of her resignation letter which provides that the Government "cannot provide any negative employment reference, or any other reference to an employer, employee, private company, police, or 3rd party regarding [Plaintiff]." ECF 21 at 4. She avers that in this resignation letter, the Government "agreed not to disparage[] the Plaintiff's character, or provide negative references to any 3rd party, not just employment references." ECF 21 at 3. Plaintiff represents that the Government breached that agreement by providing negative references about her to prospective employers and the general public. ECF 21 at 5-6.

---

[12] Plaintiff's reliance on 10 U.S.C. § 7311, a military retirement statute which provides for officer retirement following at least twenty years of service, is similarly unavailing, as Plaintiff has not alleged that she is a current or former servicemember. *See Jan's Helicopter*, 525 F.3d at 1309.

9

Even considering her *pro se* status and construing the facts in a light most favorable to Plaintiff, this claim does not state a claim upon which relief can be granted. To have a valid claim for breach of contract, Plaintiff bears the burden of showing: (A) a valid contract between the parties; (B) an obligation or duty arising out of the contract; (C) a breach of that duty; and (D) damages caused by the breach. *Peanut Wagon, Inc. v. United States*, 167 Fed. Cl. 577, 602 (2023) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)). Plaintiff fails to carry her burden for first element—pleading a valid contract. "To recover against the government for an alleged breach of contract, there must be, in the first place, a binding agreement." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003). Four basic requirements must be met in order to form an agreement binding upon the Government: (1) mutuality of intent to contract; (2) unambiguous offer and acceptance; (3) consideration; and (4) a Government representative with actual authority to bind the United States in contract. *Anderson*, 344 F.3d at 1353. "A threshold requirement for contract formation is an objective manifestation of mutual assent." *Anderson*, 344 F.3d at 1353 (citing Restatement (Second) of Contracts § 18 (Am. L. Inst. 1981)*; see* Restatement (Second) of Contracts § 22(1) (stating that to establish mutual intent to contract with the Government, a party must demonstrate the existence of an offer and acceptance of the offer by objective evidence).

Here, Plaintiff does not outline any indication that the Government intended this settlement letter to serve as an enforceable contract. The resignation letter contains no signature of a government official, nor does Plaintiff articulate any other objective evidence indicating that the Government intended to be bound by the terms of her resignation letter. *See* ECF 21 at 63-64. Rather, the document appears to be a letter Plaintiff signed and submitted to the DoL to tender her resignation. *Id.* It contains no confirmation that the Government received this letter, let alone agreed to be bound to its terms. *Id.* Evidence or explanation of mutual assent and acceptance is entirely missing from Plaintiff's Amended Complaint. *See generally* ECF 21. Moreover, Plaintiff alleges no facts supporting the other essential elements of contract formation. The same facts that demonstrate the Government did not accept or acknowledge Plaintiff's offer also indicate an absence of the "bargained for exchange" required to establish consideration. *Carter v. United States*, 102 Fed. Cl. 61, 66 (Fed. Cir. 2011). Finally, Plaintiff fails to allege any facts, like a signature, that indicate a representative of the government with actual authority entered into the contract. Because Plaintiff's Amended Complaint does not plausibly plead that her resignation letter constitutes a valid and enforceable contract, she does not state a claim for breach of contract. *Anderson*, 344 F.3d at 1353.

B.  <u>Plaintiff fails to state a claim for breach of the Department of Labor or Department of Commerce settlement agreements.</u>[13]

Plaintiff also alleges that the Government breached two other contracts—her DoC and DoL settlement agreements—by providing negative references. ECF 21 at 5-10. Specifically, Plaintiff represents that:

> The DOC, DOL and arms, provided the DOD (and other employers private etc), with negative employment references stating falsely that the Plaintiff was [mentally ill], because she had participated in past Whistleblower litigation activities. These statements were undisclosed told to many people, many police departments, State Capitol Police, Federal border Police, College Colleagues, Governor Tony Evers and Staff, Milwaukee Police, William Stall and James Knight of the DOD's supervisors and many other employees. The United States provided police with false claims too; they in turn have threated to [arrest] the Plaintiff[] in [writing] because she participated in valid, truthful, and meritorious federally protected activities … the same Wisconsin State Police Officers stop the USPS mail 2000+ days by providing and communicating the same Defamation of Character employment references false messages to USPS.

ECF 21 at 6 (modifications in original) (emphasis omitted). Plaintiff further alleges that "[t]he Agency and representatives have provided several employees, DOC, DOD, DOL employers, police departments etc., with negative employment records and references, concealed and recorded, and tried to terminate Plaintiff twice, including after settlement." ECF 21 at 8. She also appears to allege that the Government provided AirBnB with a negative reference. ECF 21 at 10. In articulating these allegations, Plaintiff cites provisions from the DoC and DoL settlement agreements that obligate those agencies to provide only neutral references when contacted by a prospective employer inquiring about Plaintiff.

---

[13] In her Motion to Strike (ECF 27), Plaintiff contended that the Government's Motion to Dismiss contains "unauthenticated evidence" she identified as "Exhibit 1." ECF 27 at 6. The Government's Motion included an appendix with three documents (Plaintiff's DoC settlement agreement, her DoL settlement agreement, and a MSPB decision), all following a title page marked "Exhibit 1." Appx. 1, ECF 23 at 28. Because Plaintiff objects to the authenticity of the documents, the Court declines to review the appended documents at this stage of the proceedings and notes the Appendix played no role in the Court's decision. However, Plaintiff herself also filed copies of her DoC and DoL settlement agreements on the docket (*see* ECF 13-1, ECF 13-2), and because the Court may consider documents that are referenced or otherwise integral to the claims in the Amended Complaint, the Court may consider the copies furnished by Plaintiff. *See Dimare Fresh*, 808 F.3d at 1306.

ECF 21 at 6-7. While it is not disputed that these provisions commit the DoL and DoC to provide Plaintiff with neutral employment references, Plaintiff fails to articulate a factual theory sufficient to state a claim upon which relief can be granted.

  To survive a challenge pursuant to Rule 12(b)(6), a plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* A complaint must include "a short and plain statement of the claim" and provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Despite the Court providing Plaintiff opportunity to amend her complaint with further detail about her contract claims, the Amended Complaint still lacks the detail necessary to put the Government on notice. *See generally* ECF 21. First, Plaintiff provides almost no detail about the purported negative evaluations. Aside from mentioning an allegation of mental illness, Plaintiff's Amended Complaint lacks any factual detail about specific negative statements allegedly made about her and she does not specify which government representative provided these references, to whom, when, and where. ECF 21 at 6. Were that not enough, Plaintiff conflates the DoL and DoC and refers to each agency interchangeably, titling her headings "DOL/DOC." ECF 5-10. Her complete merger of two separate government agencies indicates that Plaintiff fails to plead sufficient facts to put DoL or DoC on notice of the claims waged against them as separate entities that were separate employers with separate supervisors and separate fact-based scenarios that led to the end of her employment. *Twombly*, 550 U.S. at 555.

  Furthermore, even were Plaintiff's claim sufficiently detailed to put the Government on notice, she still overstates the Government's obligation under the settlement agreements. Plaintiff argues that the Government "agreed not to disparaged [sic] the Plaintiff's character, or provide negative references to any 3rd party, not just employment references." ECF 21 at 3. However, the DoC settlement agreement only states, "inquiring employers will be provided a neutral reference consisting of the dates of Plaintiff's employment with the Agency, and the title, grade, series, and salary of the positions held." ECF 13-2 at 3. The DoL settlement likewise states:

> As to any reference checks by [Plaintiff's] prospective employers . . . [Plaintiff] will direct all prospective employers to contact a Department of Labor Relations Officer . . . [who] agrees not to disclose any information concerning [Plaintiff's] appeal and the underlying action, except as required by law and will only provide the following information: (1) [Plaintiff's] position – Economic Assistant; (2) dates of employment – June 28, 2015-June 22, 2016; (3) [Plaintiff's] voluntary resignation; and (4) [Plaintiff's] annual salary.

ECF 13-1 at 7-8. Plaintiff fails to account for the constraint to "prospective" and "inquiring employers" in both provisions. ECF 13-1 at 8; 13-2 at 3. Rather, Plaintiff represents that negative evaluations were provided to "many people," multiple police departments, the Department of Defense, college colleagues, the United States Postal Service, and others. However, Plaintiff fails to allege that any of the above-listed individuals and entities were her prospective employers.[14] Because this Court cannot speculate as to which entities, if any, may have been prospective or inquiring employers, Plaintiff's Amended Complaint lacks the factual detail necessary to state a claim upon which relief may be granted.

In addition to her claims about improper and defamatory references, Plaintiff also alleges that the DoL and DoC failed to correct her personnel records in compliance with the settlement agreements. ECF 21 at 8-10. However, even assuming that both agencies were obligated to make the adjustments as Plaintiff represents, she still fails to carry her burden to state a claim here.

First, Plaintiff does not cite any provision within the DoC settlement agreement that obligates DoC to correct her records. ECF 21 at 8-10. Plaintiff's failure to cite any provisions of the DoC settlement agreement does not comport with Rule 9(k), which requires parties pleading a claim founded in contract to identify relevant substantive provisions of the contract or append them to their pleading. Plaintiff fails to cite any such provision for the DoC settlement agreement, so that claim must be dismissed. *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010) (holding that failure to state express provisions of a contract falls short of the "minimum burden" of a well-pled complaint such that the Court must dismiss for lack of jurisdiction).

With respect to her DoL settlement agreement, Plaintiff cites Section 3 which outlines record adjustment and removal under the agreement. ECF 21 at 8; ECF 13-1 at 3. However, while Plaintiff does point to specific provisions of the DoL settlement agreement in accordance with Rule 9(k), that claim is not sufficiently plead either. ECF 21 at 8-10. Again, Plaintiff fails to distinguish between the DoL and DoC in her claims. ECF 21 at 8-10. Conclusory allegations of wrongdoing against multiple entities treated as one are insufficient to place a defendant on notice and state a claim for relief. *Twombly*, 550 U.S. at 555, 570. Furthermore, even were the claim adequately pled, the Court cannot award the relief sought. Plaintiff makes no request for monetary relief for her records corrections

---

[14] While Plaintiff does not explicitly identify the DoD as a prospective or inquiring employer, she does allege that she later became a DoD employee, indicating that at one point in time, the DoD could have been categorized as a prospective employer. ECF 21 at 73. However, Plaintiff received and signed an offer of employment from the DoD, effective September 4, 2016. ECF 21 at 73. This offer of employment predated the obligations included in the DoL and DoC settlement agreements, which were signed on September 21, 2016, and September 7, 2016, respectively. ECF 13-1 at 14; ECF 13-2 at 9. The timing of these events indicates that the DoD was not a prospective or inquiring employer any time after Plaintiff's settlement agreements entered into force.

claim.[15] Except in rare instances in this Court, equitable relief is generally only available when it is "incident of and collateral to" a money judgment. *See* 28 U.S.C. § 1491(a)(2).[16] Thus, to the extent Plaintiff seeks "correction of the personnel actions" or any other form of equitable relief, her request falls outside of the Court's jurisdiction unless it can be shown to be "incident of and collateral to" a money judgment. *See id.*; ECF 21 at 3. Here, Plaintiff has made no such showing and therefore, the Court cannot grant relief for this claim.

Finally, Plaintiff makes a number of other conclusory allegations throughout the Complaint that fail to state a claim for breach of contract. Plaintiff outlines a variety of "other settlement provisional violations" in the Amended Complaint. ECF 21 at 6. Specifically, she alleges "multiple incidents of defamation of character, police arbitrary and capricious threats, false claims, unauthorized personnel records changes and falsification paperwork, negative employment references resulting in false arrest twice, sexual assault twice, theft of a government vehicle, negative employment documents, negative employment references to OPM and documents surreptitiously submitted to the Office of Personnel Management." ECF 21 at 6. Plaintiff also states that the Government "has continued a willful pattern of unlawful, surreptitious, tortious record interference," and "placing a false termination letter falsely claimed, failure to remove, incorrect records changes provided to a number of employment agencies." ECF 21 at 10. These allegations are conclusory and devoid of any factual detail. Plaintiff makes no effort to explain her allegations, who is responsible, or what provision of the contract that has been "violated." ECF 21 at 6. Therefore, the Court finds that Plaintiff simply has not pled factual allegations sufficient to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

## VI.     Plaintiff's Remaining Claims Fail

Throughout her Amended Complaint, Plaintiff makes passing references to other theories of liability within her claims outlined above. None afford Plaintiff relief.

In addition to the authorities previously discussed, Plaintiff also cites a litany of additional statutes and regulations throughout her pleading, including 5 U.S.C. § 1101 (codifying OPM's statutory authority), 5 U.S.C. § 5303 (setting annual cost-of-living adjustments to General Schedule pay rates),[17] 10 U.S.C. § 7311 (military officer

---

[15] Plaintiff seeks a total of $393,444.60 in "back pay damages relief." ECF 21 at 24. This amount is the sum total of the amounts of relief requested in each of her enumerated counts. ECF 21 at 13-14, 17, 18, 21-22. As such, the Court concludes that Plaintiff is not requesting any monetary relief for her remaining claims.

[16] The Tucker Act further limits the Court's authority to provide equitable relief that is incidental of and collateral to a money judgment to "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2). Plaintiff's requested relief does not fall into any one of those categories.

[17] Given Plaintiff's accompanying reference to "special minimum pay rates," ECF 21 at 17, the Court recognizes that Plaintiff may have meant to cite 5 U.S.C. § 5305, which addresses OPM's special pay authority.

retirement), and 28 U.S.C. § 1346 (conferring jurisdiction over certain claims to district courts). *See generally* ECF 21. Merely listing statutes does not suffice to confer jurisdiction on this Court, *see, e.g., Sanders v. United States*, No. 18-979C, 2018 WL 6190375, at *3 (Fed. Cl. Nov. 28, 2018), and Plaintiff advances no rationale or facts on how these authorities might apply.

Plaintiff also renews several claims previously dismissed by the Court. For example, Plaintiff again raises claims for "multiple incidents of defamation" and "false arrest twice." ECF 21 at 6. The Court dismissed these claims for lack of jurisdiction in its prior order granting in part and denying in part the Government's first motion to dismiss. *See* ECF 20 at 5. As such, the Court need not revisit those claims here.

Finally, Plaintiff also alleges that "the United States provided police with false claims too; they in turn have threatened to [arrest] the Plaintiff's in [writing]." ECF 21 at 6 (modifications in original) (emphasis omitted). She also lists claims of "police arbitrary and capricious threats, false claims" and "sexual assault twice" and "theft of government vehicle." ECF 21 at 6. She also references "tortious record interference" without further explanation. ECF 21 at 10. Though these allegations are vague, it appears that Plaintiff seeks to bring claims that sound in tort or criminal law, which this Court lacks jurisdiction to adjudicate. *Joshua v. United States*, 17 F.3d 378, 379-80 (Fed. Cir. 1994). Therefore, Plaintiff's remaining claims must be dismissed.

## CONCLUSION

The Court has considered all of Plaintiff's arguments. To the extent not discussed specifically herein, Plaintiff's other claims are unpersuasive, meritless, or unnecessary for resolving the issues currently before the Court. For the foregoing reasons, the Government's Motion to Dismiss (ECF 23) is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

PHILIP S. HADJI
Judge